Case number 23-1502 from the Southern District of Iowa, Raymond Black v. Swift Pork Company. May it please the court. Counsel. My name is David Albrecht and I represent... Counsel. Thank you Judge. David Albrecht for the appellant in this case. When I look at the briefing, there are really three points which I must convince you for the plaintiff to win. Two, more so in line with the interference claim and one for the discrimination claim. For the interference claim, the two points, the first one being that there is a factual dispute of whether Raymond Black violated a written policy... No, no, my first question is what's the benefit he was deprived of? Opposing counsel says none. Yes, your honor, and we obviously dispute that. On June 16th, Raymond Black left after telling his supervisor, my wife is sick and I'm going home on FMLA. This was on June 16th. The defendant is arguing that it fired Raymond Black for leaving on June 16th. They're creating a direct causal link between his leaving, which was for FMLA, and his termination. So the benefit was losing his job? So Raymond Black was entitled to FMLA protection for his leave on June 16th. The defendant did not give him FMLA protection on June 16th and instead fired him for that absence. So the benefit of which they deprived him was the FMLA qualifying leave on June 16th. Was it, just to follow up, you mentioned two things, the dismissal and the leave itself. I think you're saying now it's really the leave. It led to the dismissal, but the denial of the leave was really the benefit. Yes, Judge, because under an interference claim, you have to prove, of course, how you were harmed by the failure there. So the district court ended up saying that there was no dispute that Raymond Black essentially violated this written policy, that employees needed to stop by the Human Resources Office for approval before they left. However, there is a factual dispute on that, the main point being that there is no written policy of the defendant that you have to stop by HR for approval. In making its determination, the district court ignored all of Raymond Black's evidence, which goes against the requirement of the district court and this court at summary judgment to view all facts and reasonable inferences in the plaintiff's favor. And in doing so, here are the facts. There is no written policy requiring HR approval before an employee leaves mid-shift. The HR director, Zina Boyd, admitted under deposition testimony that there's nothing written down. Importantly, Raymond testified, no one's ever told him of this, and his direct supervisor, Patrick Griffith, which is the one Ray reported to and told on June 16th that he was leaving, Mr. Griffith testified that he has never trained any maintenance staff that they need to stop by HR for approval before they leave mid-shift. And so it was error for the district court to hold that there's no dispute that Raymond Black violated a policy that doesn't exist. On that same point, when the district court found that it was HR's prerogative to weigh the evidence and find that Raymond didn't have the necessary approval, what the district court did was elevate the defendant's policy above the requirements of the FMLA. So when Ray left... That wasn't the basis for the court's decision as I read it. It was that the claim for FMLA leave was a sham, as demonstrated by the events on that morning. So there really were two bases on the interference claim. First, the district court found that Raymond wasn't entitled to leave solely because his decision to provide notice of that leave happened in the afternoon versus the morning. So the district court basically said Ray could have called in on the morning of June 16th and requested a full day of FMLA. Thereby, he's admitting that Ray was entitled to leave as of June 16th. But then the court... Wait, that's where full day and half days differ. I thought it was stipulated you've got to at least give notice to your supervisor if you're going to leave mid-shift. Correct, and he did so. And the district court said, yeah, but it was made up after the fact, third or fourth reason. Well, the problem with that, A, is that it's a factual determination, and that is to be done by the jury of an entire panel, not a jury of one. What's the disputed fact in the sequence of events? Depending on which sequence, Your Honor. In June 16th, the defendant claims... I thought it was pretty consistent. I apologize, Your Honor, but it is not. There are disputes, but it's clear about coming to work the day after his sick leave, being told he wasn't assigned that day to where he was expected to be assigned. Yes. Sitting around grumpily. Yes. And then asking, you know, well, why didn't you put me back where I belong? And being told, because the boss wants someone who's there all the time, it's not my fault I got sick. And there was this comment about no before. And then he says, well, where am I going to be assigned? And the boss says, stay tuned. Yes. And he says, well, he goes and checks with HR, and, yeah, he's got vacation time available. I'm not going to sit around here. I'm going on vacation. And they won't sign the form. And he says, oh, yeah, by the way, my wife's not feeling well. I'm going home FMLA. And he walks out. I think that's pretty undisputed. The timeline, though, maybe I would disagree with the inflections of it. Well, everybody puts their own spin on it. But my point, Your Honor, is the spin at summary judgment has to be taken in Ray's favor. And in Ray's favor, on the morning of June 16th, his wife, Janet, experienced a flare-up. That entitled him to leave. Now, I didn't read her document. Did it say flare-up or just not well? I know the briefs tell me that she said he helped me that day. And he at least said, Janet's not well. I'm going home. On FMLA. Yeah. Yes. But if it wasn't the flare-up, he wasn't certified. A couple points there. So Janet's affidavit said that on the morning of June 16th, she was experiencing worsening chest pain. And in the FMLA certification, that is the basis for the leave, is when she experienced worsening chest pain. That's the flare-up of her condition. And so her affidavit does say, on that day, I was experiencing worsening chest pain. And that when Raymond came home, he assisted her with medications, oxygen. And does he say that he told the immediate supervisor, did he tell her that it was a flare-up? Or he just said, she's not well. I'm going home. He said, my wife is sick. I'm going home on FMLA. There is no requirement that he say it's a flare-up. There's actually no requirement that he say the words FMLA. What the rules and regulations state is that once an employer has enough knowledge that an employee's leave may qualify under the FMLA, they are required to follow certain procedures. And what the district court found was Raymond's determination or decision to take leave in the afternoon somehow meant that he was never entitled to take leave at all. That conflates the second element of an interference claim, whether an employee provided notice,  But can they set up reasonable restrictions? And I don't hear you arguing. So, for example, what if they said, for example, and I know this is an issue in the case. It's disputed. You have to go to HR. You can't just tell your immediate supervisor our policies. You have to tell HR. You have to call a particular phone line, which is another issue in the case. All those things can happen and can be requirements for the taking of FMLA leave, correct? They can be if the employer is then going to follow the other requirements of the act. First, I would agree with you. Those are disputed. Okay, your best case for that proposition. 825.301.C, Your Honor. And what that says is that if there's a dispute between the employer and the employee as to whether or not somebody's invocation of leave is valid, that the employer and the employee have to sit down and talk about it, and that those discussions and the decision must be documented. Because once an employee invokes their right to FMLA, using the words FMLA or not, the employer then has the burden and the obligation to designate that leave as FMLA qualifying or not within five business days. But you can't just, like, call the janitor, you know, your buddy the janitor, and say, Hey, janitor, I'm taking FMLA leave. You've got to, I mean, you can set up, I mean, I think you would agree, you can set up restrictions on who you call and when or who you talk to. Yes, Your Honor, and the factual record on that is completely disputed. The defendants have continued to argue they have some written policy on it. We've never seen one. And Patrick Griffith, the one who received Raymond's report that I'm going home on FMLA, said I've never trained on anybody that anybody had to go home. And moreover, when Raymond told him, I'm going home, Janet's sick, I'm using FMLA, Mr. Griffith responded, Okay. Nobody said if you leave, you're fired. Nobody said you're going to get in trouble. So there are very clear things within the FMLA. It's like a playbook. If there's a dispute, they need to talk about it, document it, and record it. And if we look at the Thorson and the Spangler cases, both out of the Eighth Circuit, this makes clear. The Spangler case, the employee was fired without going through any of this sort of investigative process. And Spangler said a jury could find that the employer fired the employee rather than going through the process to decide whether or not the request was valid. And to your point, Judge, Spangler specifically discusses that because there's a quote when talking about if the employer thinks that there's a dubious nature of the claim, they still have to go through that process, and they failed to do so. How do we know that? Because they fired him, and there's zero documentation that they talked to him about whether or not his leave on the 16th qualified as FMLA. So there was no back and forth. Ray left saying, I'm leaving on FMLA, and then the next day... Why did they have to talk to him? Because he's... Once an employee says, I'm leaving and I'm taking FMLA, the employer either needs to designate it as FMLA, or if they're not going to or they think there's something hinky about the request, that's when they need to discuss it with him under 301C and figure out if they think, you know what, this wasn't a legitimate request. So it's just because when he had the meeting about what happened that morning. Oh, on the 19th, yes. Yeah, the meeting that led up to the termination. The meeting that led them to conclude that this was a phony FMLA claim. So they didn't say the magic words that morning? Is that the problem? It's not about magic words, Your Honor. I did want to reserve my time for rebuttal. But on the 19th, they never said, we don't believe your request for FMLA. They claim in the 19th that Ray never brought up FMLA. The entire substance of the June 19th meeting is disputed. Ray says, I told HR that I had told my supervisor I was using FMLA. In her deposition, Ms. Boyd said he never said anything about FMLA. And furthermore, there was no evidence post that meeting that they fired him because they thought he made a sham request. There's zero documentation saying we don't believe his request for FMLA whatsoever. They admit there are policies within the defendant's handbook that require documentation of disciplinary records or termination. They don't have an answer for why none of those were followed for Ray. Well, can I just ask one follow-up question, which is for interference, I think the interference claim is stronger than the FMLA discrimination claim. And I'll tell you why, because I think the sham point has a lot of weight on the discrimination. Maybe there's no evidence of it, but they had let him take FMLA leave pretty much for seven years. And there were other, I mean, it was clear that he had tried to do other things first. And I just wonder whether there's enough evidence to reach a jury on the discrimination claim, even if there's enough on the interference claim. So that's what's troubling me. So for the discrimination claim, the court dismissed it by saying that Raymond didn't make his request in good faith. Two problems with that. First, good faith is a determination to be done by the fact finder, and that is not the role for the judge at summary judgment. Secondarily, the court, you're right, judge, found that because he used FMLA and wasn't fired in the past, they couldn't have fired him for it now. But in so doing, he ignored, again, all of Raymond's evidence. When Raymond took FMLA in the past, it was not, quote, without incident, end quote. He was ridiculed. He was mocked. He was accused of lying and going out fishing. And there are two ways to read that he used FMLA in the past and then was fired for it later. There's the interpretation of the district court. But an equally persuasive interpretation is what we all know of as the phrase called, that's enough. And when you're, that's enough, you're saying that it's something that you've put up with for a long period of time. It's bothered you, as evidenced by the ridicule. And then eventually you say, you know what? I'm tired of this guy missing so much work. I want somebody here all the time, and I'm getting rid of him. I want to go back to the decision maker, because I think what he was saying is not, I think it's a sham. I think what he's saying is all the evidence points to the employer believing it is a sham. Now, the employer might have been wrong about that, but that's what the employer believed, that he walked off the job. And that's evidence by, oh, we thought you turned in your ID card. So there is zero evidence in the record of the employer saying, we thought your FMLA request was a sham. There's nothing. There's nothing in the deposition. There's nothing in the document. That was something that the district court pieced together, again, performing the role of a jury of one. And so what we have here, if we look at the Thorsen case, what Thorsen said was, look, it may be that the employee's health condition doesn't actually qualify as a serious health condition. But because when that issue came up, because the employer failed to follow the required conversation that I talked about in 301C, as well as kicking out the designation notice required in 202B, because the employer failed to do what it needed to do, it couldn't go back and attack that. And so it may be that the jury finds that Raymond wasn't entitled to leave that morning or that it was a sham or anything like that. But the point is, is that it could be. It's a fact question. We have juries to decide these issues. We've lionized juries since we founded this country. And in making the determination that there was no issue of material fact, the district court not only viewed the facts in the defendant's favor, but ignored all contrary evidence. I see my time has expired. I burst right through my rebuttal time. But for these reasons, we would ask that the court reverse and remand for a jury trial. And if so, I'd be more than happy to address issues on rebuttal. Thank you. Thank you. Ms. Winter. Good morning, Your Honors. May it please the court. There are two aspects of the record in this case that framed the trial court's decision-granting summary judgment that my colleague does not want to deal with today. The first, Judge Strass, you touched on. The second, Judge Loken, you touched on. The first is that it's undisputed. Appellant took FMLA leave on an intermittent basis over 150 times during his tenure with my client, Swift Pork. And while today, Appellant argues that that was with incident because he was ridiculed and mocked by coworkers or a supervisor, what you guys will find, what Your Honors will find, is there is no evidence in the record to support that claim. There is not a single citation in their briefing to suggest that Appellant was ever alleged to have been harassed by coworkers. And there is no citation in the record because that was not the testimony that even Appellant himself gave. It was without incident, and he was able to take all of that FMLA time. The second aspect that frames the district court's decision is that this final time for which he was terminated on June 16th was different because he did fail to follow the employer's policy when it came to providing the appropriate notice to the appropriate people. And in this respect, his termination was consistent with over 150 other people who had been terminated from that plant for job abandonment under the same circumstances for leaving early. Those other people also had tried to take FMLA leave, or they just walked off the job? There's no evidence in the record, Your Honor, but given that this plant has had over 1,700 requests for FMLA in a five-year period, we can presume there's going to be all sorts of reasons people may have left. Some of them might have been because of medical-related reasons. But the point is, there's no similarly situated comparator to suggest that someone else walked off the job, was excused from that conduct, but hadn't done it on FMLA and was treated better, for example, on the pretext issue. Is the question of whether there's a policy on how to notify about FMLA, is that in dispute? Are there disagreements? Because opposing counsel presents this as just a fact question. Judge Kelly, Your Honor, it is not in dispute. And I'm glad you raised that issue because it was going to be my next point. There is a written policy that requires employees to get approval when leaving early, before their shift has ended, from both HR and their supervisor. That policy is the Atomel Plant Attendance Policy. It's in the appendix at pages 237 to 239. Now, today, Appellant has argued that Ms. Boyd testified there is no written policy. That's not accurate. She was asked in her deposition whether the employee handbook and, in particular, the FMLA policy, which is at Exhibit 22, addressed this issue of leaving early. And her answer was no. She wasn't aware of that being in writing in that specific policy in the handbook. But Exhibit 23, which is the attendance policy itself, was not what she was asked about, and she provided no inconsistent or conflicting testimony with respect to that policy. What about adherence to the policy? Was there any evidence that even though the policy perhaps did say that workers were not necessarily required to or they were not necessarily and didn't always get some kind of a negative result from not following those policies? Your Honor, the only evidence to that effect was from Appellant himself, who said that there had been other occasions when he left early without getting approval from HR. But the only specific example he gave of that was when there was indeed a medical emergency and his wife was rushed to the hospital. And to the extent he didn't get disciplined or terminated for failing to go to HR under those circumstances, the company was complying with the FMLA. And to Judge Strass' question earlier, the FMLA contemplates and allows an employer to require employees to follow their reasonable and ordinary notice requirements when needing to exercise a right to leave on FMLA, even on an intermittent basis. And in this instance, for example, in the case of emergency, he could come back afterward and say, hey, my wife was rushed to the hospital on an ambulance. I needed to go and therefore not obtain HR approval. But that specific example aside, Your Honor, there are no other examples in the record where other employees left, didn't obtain HR approval, and then were still permitted to return to the company's workplace. What do we do about the fact that opposing counsel and I sort of referenced this, the dispute of fact on what the procedures were? This is not a straight – I don't think it's a straightforward case where it says, do this, go talk to this exact person, and that's the only way you get it. It's more like there's a dispute about whether you tell your supervisor or whether you tell HR. And what do we do with that dispute? Well, Your Honor, there's nothing in the law, whether in the FMLA or in our case law, that says in a policy has to be in writing. The only person who says the policy is in dispute is the appellant himself. But if you look to the attendance policy, it states on pages 237 to 230 – excuse me, I think it's 238 to 239 of the appendix, if you are leaving early before your shift ends, you have to obtain approval from both HR and your supervisor. And more importantly, on the first page of the attendance policy, it states in no uncertain terms, if you leave the plant without authorization, you will be treated as having abandoned your job, which is deemed a voluntary resignation. So when it comes today, for example, to appellant's argument that there is some sort of pretext argument because there's no termination document in the record with respect to his termination, that's consistent with the policy treating it as an involuntary termination. Now, I realize today I've been flopping back and forth on my arguments when it comes to both the interference and the discrimination claim. And Judge Strauss, to your point, I think that the interference claim is the more interesting one to grapple with today in your decision, in part because that claim does not have the issue of intent when it comes to discrimination. But as Judge Loken noted at the outset of appellant's argument, Mr. Black received all the FMLA benefits to which he was entitled. And while appellant would like to argue post hoc, well, they never actually characterized that absence on June 16th, checked the box that it was FMLA, or the same for the following day. The truth of the matter is he took the days off. He had the time, whether it was medically necessary or not, and we in the district court submit that it was not medically necessary. He had the leave off. It was not until June 18th, 2020, when it is undisputed by his own testimony that he called in sick, not on FMLA, that they then called him in and asked to speak with him about the circumstances of how he left that day in order to determine whether, for example, it was a medical emergency that would excuse him from having to get HR approval. In other words, he was no longer protected under the FMLA. And also under his own testimony, the reason he called in sick on June 18th instead of FMLA was because he had exhausted all of his FMLA benefits at that time and on that day. And under the Stallman cases, Your Honor, the court recognized that when an employee has obtained all of their leave benefits they sought, their claim is fundamentally one that requires an inference of discrimination because there's no denial of benefits. Your Honor, there's another reason, though, that the claim on interference fails, and that is because we have demonstrated, as we've already argued today on the evidence, that Swift would have made the same decision whether or not he had invoked FMLA as he walked out the door. And there's a long line of cases, the most positive of which is probably the Bacon v. Hennepin County case, which, Judge Slocum, I believe you were on the panel for. And in that case, the employee, unlike Mr. Black, was terminated while still on FMLA leave. The employee alleged that she was told by her supervisor at some point during her leave she no longer needed to call in her absences anymore, despite what the hospital policy said. Despite that allegation in her deposition testimony, summary judgment was affirmed on the basis that the hospital demonstrated it would have made the same decision in any respect. And the same is true here. We have a written policy. We have 150 other terminations for the same reason. There's nothing from the record to suggest there was any inconsistencies in how Mr. Black was treated. He's also challenged, with respect to the discrimination claim, with an argument that there's a dispute about who was the decision maker. But whether it was Mr. Mock, as he claims he was told by Ms. Boyd when she notified him that they were viewing him as abandoning his job, or whether it was Ms. Boyd herself, who we've all along, all of the witnesses have confirmed, made the decision, it doesn't matter, because there is not a single piece of evidence in the record to suggest that either one of the people that made the termination decision demonstrated any discriminatory animus. In fact, the record shows the exact opposite. Mr. Mock affirmatively asked to bring Mr. Black in for this investigative meeting because he did not want to lose a long-tenured mechanic. That was an opportunity that other employees didn't get when they walked off the job. Ms. Boyd had received previous reports from supervisors believing that Mr. Black may have been abusing his FMLA leave. And when she received those reports, the record shows she dismissed them. She didn't follow up on them and bring him in at that time. Instead, she brought him in, they met with him for over an hour. He was given ample opportunity to explain the circumstances of his leave that day. And despite that opportunity, she was confident in her decision that termination was appropriate. And there's the long line of cases, most specific of which on this issue, even if she was mistaken, and even if he had gotten the okay from Mr. Griffith's leave early that day, her good faith belief that he had violated the company policy does not create an issue of fact on pretext if the appellant is challenging whether he engaged in misconduct. And in terms of the cases cited in our briefing on this issue, the one that's likely central to it when it comes to an FMLA termination would be the Evans case. What about, just a quick question, you mentioned the interference versus discrimination. I'm really interested in that too. So with the interference claim, presuming that that goes forward, assuming that that goes forward, but discrimination does not, what is the difference between those two claims under the FMLA leave? Is the damages different? So if it's interference, can he go after the termination too? Or does he have to do that in a disability, or excuse me, a discrimination, was the word I was looking for. Your Honor, the damages I submit would be the same, because ultimately the idea is if your termination interfered with your FMLA benefits, I believe you still get to argue you shouldn't have been terminated and you should have been able to continue your FMLA leave. But in that respect, it's also important to consider that we haven't touched on the final issue before you today, which is the District Court's original major finding as to why the interference claim failed. And that is because Plaintiff failed to meet his evidentiary burden with respect to whether he was entitled to take FMLA on June 16th under the circumstances he invoked it. And when we look to the FMLA, it is very clear. When you are seeking to take FMLA to care for a family member with a serious health condition, your intermittent leave must be medically necessary care. The District Court looked at all of the evidence in the record and concluded that Mr. Black had failed to meet his evidentiary burden to show that the care he provided that day to his wife was medically necessary. Now I thought, correct me if I'm wrong, I thought that the regulations actually place it on the employer to sit down or push the employee, say I need more information from the doctor or something like that. How does the argument you're making square with that? It does. So 2613 of the FMLA states that an employer may require an employee to substantiate the medical necessity of the need in question with a provider certification. And SWIFT exercised that right here. And if you look at that certification form, it confirms as the District Court recognized that the reasons that Mr. Black and his wife have described, he provided care that day, don't fall within the certification as to what the provider said was medically necessary. The only leave that the provider certified in that form as being medically necessary on an intermittent basis was for transportation to the hospital and to medical appointments. So what does the record say about whether that is in fact how Black used it? Because that's over 150 times in three years all for medical appointments and hospitalization and nothing like her affidavit says, well, he comes and helps me at home with basic things. I'm paraphrasing. Your Honor, there's no evidence in the record as to what he used the leave for on the prior occasions. And it may be that he was using it for these reasons and they weren't actually medically necessary and the company never challenged them. But that does not preclude the company from challenging them now that we are in a lawsuit where it's his evidentiary burden to show the leave was medically necessary and the district court when considering that issue examined the evidence that was in the record and the evidence that was in the record was a provider certification form that affirmatively checked the Black's no to the question of whether his need for leave would be to provide medically necessary care outside the hospital and to appointments. And the record in the summary judgment decision was that Mrs. Black had given an affidavit describing him as assisting her around the house and helping with her medications. That doesn't fall within the FMLA regulation requirements. The examples given are that medical necessity is demonstrated when the family member is unable to care for themselves. And Mr. Black offered no testimony to suggest she was able to care for herself when he left for work that day but suddenly unable when he got frustrated with his supervisor and left in the middle of the day. Your Honor, thank you for your time unless you have any additional questions I will submit to my colleague. Thank you. I'll give you a minute for rebuttal. Thank you Judge. So very quickly medical necessity. If we look at page two of the plaintiff's reply brief medical necessity does not deal with the timing of care. It deals with the type of care. This is set forth in 202B as well as explained in the Kleinzer case cited on that page of the appellant's reply brief. Medical necessity has to do with whether an employee needs a block, continuous leave, or intermittent. It may be medically necessary for an employee to use leave intermittently as opposed to continuous care. It does not reflect that you can only have leave if somebody needs you right now. If someone wants to take FMLA to bond with a newborn child that is not done so because it's medically necessary. It's done so because it's a protected right of the parent. Whether Raymond was entitled to leave on that morning depends on whether Janet was suffering worsening chest pain on that day and whether Raymond provided sufficient facts which, if believed by a jury, could say he was entitled. The Thorson case says whether you're entitled to FMLA is to be determined by the jury, by the fact finder. We submitted an unimpeached affidavit from Janet Black saying she suffered worsening chest pain and that Raymond provided care in line with his certification. The fact that he decided to invoke his leave in the afternoon rather than the morning does not change his initial entitlement. It may be, Your Honor, that a jury believes that it was a sham or something like that. There's no evidence from the employer saying that, but a jury might believe that. But they might not. That's why when there are such disputed facts as in this case, it needs to go to the jury. I did just want to talk about that part of medical necessity. There are a few other points I'd like to cover, but I do see that my time has expired. Thank you. The case is thoroughly briefed and well argued, and we'll take it under advisement.